# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LOCKHEED MARTIN CORPORATION**
a Maryland corporation,

                    Plaintiff,

-vs-                                                    Case No.  6:05-cv-1580-Orl-31KRS

**L-3 COMMUNICATIONS CORPORATION, a
Delaware corporation, MEDIATECH, INC., a
Delaware corporation, KEVIN SPEED, STEVE
FLEMING, and PATRICK ST. ROMAIN,**

                    Defendants.
_____

**L-3 COMMUNICATIONS CORPORATION, a
Delaware corporation,**

                    Counter-Plaintiff,

vs.

**LOCKHEED MARTIN CORPORATION, a
Maryland corporation,**

                    Counterclaim Defendant,
and

**JACK KELLY, THOMAS DORSEY,
MICHAEL HOMAN, and THOMAS HULL,**

                    Additional Counterclaim
                    Defendants.
_____

## ORDER

This cause came on for consideration after oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **SPEED'S EXPEDITED MOTION TO COMPEL DISCOVERY (Doc. No. 271)** |
| **FILED:** | **June 28, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

| | |
|---|---|
| **MOTION:** | **STEVE FLEMING'S EXPEDITED MOTION TO COMPEL DISCOVERY REGARDING THE TESTIMONY OF CHRIS POLDERVAART (Doc. No. 274)** |
| **FILED:** | **July 2, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

| | |
|---|---|
| **MOTION:** | **ST. ROMAIN'S JOINDER AND MOTION TO COMPEL DISCOVERY (Doc. No. 275)** |
| **FILED:** | **July 6, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

Individual Defendants Kevin Speed, Steve Fleming and Patrick St. Romain filed the present motions asking the Court to compel production of documents related to forensic examinations by Plaintiff Lockheed Martin Corporation (LMC) of their individual computers, including the reports of the outcome of those examinations and related e-mail communications, and to compel Chris Poldervaart, an LMC employee who conducted the examinations, to answer deposition questions regarding the examinations. LMC contends that the documents and information are protected by the

attorney-client privilege and work product doctrine, and LMC's counsel instructed Poldervaart not to answer questions regarding the examination during his deposition.  The withheld documents and the answers to the questions that LMC's counsel instructed Poldervaart not to answer are described in LMC's privilege log.  Doc. No. 303-3 through 303-6.[1]  At my direction, LMC tendered the withheld documents to me for *in camera* review.

## I.    BACKGROUND.

Speed was an employee of LMC until March 4, 2005. Lorraine Martin Aff., doc. no. 5-4, ¶ 9. He was the program manager for the ATARS I contract, which was awarded to LMC, and he was on the "capture team" organized for LMC to pursue the ATARS II contract.  *Id.* ¶ 9; Thomas Dorsey Aff., doc. no. 5-34, ¶¶ 11-12.

Fleming was an LMC employee until March 18, 2005.   Martin Aff. ¶ 17.  Fleming had been part of the "ATARS I Red Team, which was tasked with anticipating the proposals to be submitted to the USAF by the competition."  Second Amended Complaint, doc. no. 116,  ¶ 26; *see also* Dorsey Aff. ¶ 22.  Thereafter, he became Director of C-130 Flight Programs, a senior management position. Martin Aff. ¶ 17; Dorsey Aff. ¶ 22.

St. Romain was an LMC employee until April 23, 2005.  Martin Aff. ¶ 34.  He was an ATARS I site manager working at the USAF Hurlburt Field.  Dorsey Aff. ¶ 19.  St. Romain was a member of LMC's ATARS II capture team. *Id* ¶ 12.

---

[1]  LMC prepared an original privilege log, doc. no. 271-6 at 2 through 20, and a supplemental log, doc. no. 271-6 at 21 through 22.  After the present motions were filed, LMC prepared the present revised log, doc. no. 303-3 through 303-6 (hereinafter the Revised Privilege Log).  In the Revised Privilege Log, LMC asserted claims of attorney-client privilege as to some documents to which it had not asserted the privilege in the original or supplemental logs.

Speed tendered his resignation from LMC during the week of February 8, 2005.  Martin Aff. ¶ 10.  Speed told Lorraine Martin, LMC Vice President, Flight Solutions with overall responsibility for ATARS, that he planned to join Defendant Mediatech, Inc. (Mediatech) and would have an ownership interest in the business.  *Id.* ¶¶ 2, 10.   Edith Jones, LMC Simulation, Training & Support (STS) Vice President and General Counsel, conducted an exit interview with Speed on February 25, 2005, during which Speed told her that he was not going to be engaged in the military side of Mediatech's business. Jones Dep., doc. no. 303-8 & 303-9, at 14, 49.[2]

In late February and early March 2005, Fleming informed Martin and Jones that he was leaving LMC to become an independent consultant with Mediatech.  Martin Aff. ¶ 20; Jones Dep. at 175; Jones Aff., doc. no. 5-25, ¶ 8.

In early April 2005, St. Romain informed Jones that he was going to work as an independent consultant after taking time off to go fishing. Jones Dep. at 221-22; Jones Aff. ¶ 16.

After Speed left LMC, Jones heard a rumor that Mediatech might have entered into a teaming agreement with Defendant L-3 Communications Corporation (L-3) to compete for the ATARS II contract.  Jones Dep. at 79.  She also learned that Speed, Fleming, and a business development person employed by L-3 met with the USAF in Ogden, Utah on April 5, 2004.  *Id.* at 82, 84, 190; Jones Aff. ¶ 11.

Based on this information, Jones became concerned "that there had been a breach of [LMC's] confidential and proprietary information."  Jones Dep. at 117.  In March or April 2005, Jones asked Russ Densmore, a member of the LMC IT department, to do a forensic review of Speed and Fleming's

---

[2]  I will use the internal pagination of deposition transcripts rather than the pagination assigned when the transcripts were electronically filed.

-4-

LMC computers.  Jones Dep. at 84; Revised Privilege Log Tab 1.  Densmore brought in another LMC IT employee, Chris Poldervaart, to assist with the review.  Jones Dep. at 84; Poldervaart Dep., doc. no. 303-10, at 22.  At the time Jones requested this review, she anticipated litigation over Speed and Fleming being involved in the L-3 ATARS II competition assuming that an internal investigation developed facts warranting litigation.  Jones Dep. at 86, 190.

Densmore made forensic images of the Speed and Fleming computers to use for the forensic analysis.  Poldervaart Dep. at 35-36.  At the time the image was made of Speed's computer, it had already been reimaged (also called re-baselined) by LMC, but Fleming's computer had not been reimaged.  *Id.* at 36-37.  Reimaging results in data on the computer being stored in unallocated space on the hard drive.  Poldervaart Dep. at 48-49.

Poldervaart's "initial task was to look for an[y] evidence of proprietary data that may have left the company."  Poldervaart Dep. at 52. Poldervaart did not recall being asked to determine whether Speed had destroyed or permanently removed any documents from the LMC computers.  *Id.* at 50-51.

Jones later learned that St. Romain had also joined Mediatech and was going to be working on the ATARS II bid.  Jones Dep. at 237; Jones Aff. ¶ 18.  Sometime thereafter, Jones directed that St. Romain's laptop and personal access device (PDA) be included in LMC's forensic examinations.  Jones Dep. at 240, 246; Poldervaart Dep. at 63-64.   Poldervaart testified that "St. Romain's departure from the company was somewhat what prompted the reopening of that investigation."  Poldervaart Dep. at 205.

During 2005, Densmore and Poldervaart briefed Jones and Eric Katz, another LMC attorney, on the progress and results of the forensic examinations.  Jones Dep. at 241; Poldervaart Dep. at 56-

57, 62, 65.  No information could be recovered from the PDA because its battery had fully drained and no information was thereafter stored on the PDA.  Jones Dep. at 244.  Poldervaart prepared an initial report of his investigation, which he delivered to Jones and Densmore in April 2005.  Poldervaart Dep. at 24-25; Revised Privilege Log Tab 8. He prepared a second report of his forensic examination, which he delivered to Jones in July 2005.  Poldervaart Dep. at 33; Revised Privilege Log Tab 28.

On July 28, 2005, outside counsel for LMC hired Benjamin R. Cotton to perform an independent forensic examination of Speed and Fleming's computers.  1st Cotton Aff., doc. no. 5-13, ¶¶ 2, 5.  One of Cotton's associates, Jennifer Christianson, was assigned the task of forensically examining St. Romain's computer.  2nd Cotton Aff., doc. no. 192-8, ¶ 2.

When Cotton received Speed's computer, it had already been "rebaselined," which resulted in the data on the computer being located in unallocated filespace.  1st Cotton Aff.  ¶ 2.  Cotton averred that "[r]ecovering information from the unallocated space of a hard drive is extremely labor intensive and is, in many cases a task that requires painstaking manual processes."  *Id.*   Cotton signed an affidavit on October 15, 2005, detailing the outcome of his examination as of that date.  1st Cotton Aff.

On October 20, 2005, LMC filed its initial complaint in the present case.  Doc. No. 1.  In it, LMC alleged, among other things, that Fleming and St. Romain had intentionally accessed LMC computers without authorization or in excess of authorization and thereby obtained LMC proprietary or trade secret information, which each of them used or threatened to use to his own benefit and the benefit of Mediatech.  *Id.*  ¶¶  87, 90, 92.  On the same date, LMC filed a motion for a temporary restraining order, in which it alleged as follows:

> Speed, Fleming, and St. Romain resigned from their employment with
> Lockheed Martin.  Immediately prior to departing, Fleming copied at
> least 867 documents containing 7,428 pages, many of them containing
> Lockheed Martin proprietary and/or Trade Secret Data.  St. Romain
> transferred documents to a hand held Personal Digit[al] Assistant
> ("PDA") late the night before his last day, and Speed attached thumb
> drives to his laptop computer but re-baselining of the computer
> precluded identification of any documents copied.

Doc. No. 2 ¶ 2.  LMC further alleged that "Speed, Fleming, and St. Romain breached their obligations

to Lockheed Martin by threatening to misappropriate Lockheed Martin's Trade Secrets Data, and by

obtaining proprietary information in an attempt to assist Mediatech and L-3 in procuring the KING and

ATARS II and possibly other contracts with the USAF."  *Id.* ¶ 4.  LMC supported the motion with

Cotton's affidavit, among other things.  Doc. No. 5-13.

On January 25, 2006, Cotton signed a second affidavit.  2nd Cotton Aff.  In the second

affidavit, Cotton indicated that his earlier report had been incorrect regarding times that a "CD Burning

Service" was engaged on Fleming's computer.  2nd Cotton Aff. ¶ 19.  Also, in the original affidavit,

Cotton averred that 43,293 files were accessed on Fleming's computer on March 17, 2005, between

1:00:38 and 1:06:09 a.m., which Cotton averred was "consistent with copying these files to another

hard disk."  1st Cotton Aff. ¶ 5.A.(2).  In the second affidavit, Cotton attested that outside counsel

asked him to reexamine this conclusion.  2nd Cotton Aff. ¶ 20.  Based on this reexamination, Cotton

averred that "the activity on the 17th of March from 01:00:38 EST to 01:06:09 does not conclusively

indicate that file transfer or file copy activities occurred."  *Id.*

In April 2006, Poldervaart was asked by LMC's outside counsel to compare documents on a

CD-ROM produced by Speed with documents electronically maintained by LMC in the ATARS share

folder.  Poldervaart Dep. at 39-42.  Poldervaart prepared his third report, in which he compared the

-7-

Speed CD-ROM with the LMC ATARS I share folder on April 11, 2006, Poldervaart Dep. at 42 & doc. no. 271-7 at Bates No. LM00267920, a copy of which was disclosed in discovery.

## II.   ANALYSIS.

During oral argument on the motions, counsel for the movants withdrew their requests for disclosure of communications from counsel to Poldervaart, Densmore and others. *See* documents at tabs 1, 2, 3 (only as to reply from Jones), 5 (only as to reply from Jones), 6 (only as to portion of e-mail string written by Jones and Jones' handwritten notes), 10 (only as to reply from Jones), 11, 13 (only as to reply from Jones), 16 (only as to e-mail authored by Katz), 17, 18 (only as to reply from Jones), 19, 22, 23 (only as to reply from Jones), 25 (only as to reply from Jones), 27, 29, 30, 31, 32 and 33 (only as to email from Jones). Therefore, I consider only the written and oral communications from Poldervaart and Densmore to others in this analysis.

A.   <u>Attorney-Client Privilege</u>.

1.   *Applicable Law.*

The issues regarding unauthorized access to and use of computer-stored data in this case are based on violations of federal statutes. The issues regarding theft of trade secrets arise under state law. "[T]he federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege." *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992).

In order to establish that information is protected by the attorney-client privilege, the party claiming the privilege must establish the following elements:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is [the]
> member of a bar of a court, or his subordinate and (b) in connection with
> this communication is acting as a lawyer; (3) the communication relates
> to a fact of which the attorney was informed (a) by his client (b) without
> the presence of strangers (c) for the purpose of securing primarily either
> (i) an opinion on law or (ii) legal services or (iii) assistance in some legal
> proceeding, and not (d) for the purpose of committing a crime or tort;
> and (4) the privilege has been (a) claimed and (b) not waived by the
> client.

*In re Grand Jury Proceedings 88-9*, 899 F.2d 1039, 1042 (11th Cir. 1990); *see also In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987)("The person invoking the privilege does bear the burden of proving its existence").  The privilege extends to communications from an attorney to his client, as well as the reverse.  *United States v. Pepper's Steel & Alloys, Inc.*, Nos. 87-1306-CV, 85-0571-CV, 84-1443-CV, 86-1531-CV, 1991 WL 1302864, at * 3 (S.D. Fla. Mar. 19, 1991).  When a corporation is a client, communications between any corporate employee, acting within the scope of his corporate duties, and an attorney for the corporation through which the corporation may obtain legal advice may be privileged.  *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).

"'[T]he protection of the privilege extends only to *communications* and not to facts. . . . The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney.'"  *Id*. at 395-96 (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (1962)).  Similarly, all communications between an attorney and a client are not privileged.  *See In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992).  So, for example, when information is communicated to a lawyer with the intent that the information be publicly disclosed, courts have found that the communications are not intended

to be confidential.  *See In re Hillsborough Holdings Corp.*, 118 B.R. 866, 869-70 (M.D. Fla. 1990)(citing *In re Grand Jury Proceedings,* 727 F.3d 1352, 1358 (4th Cir. 1984)).

A client waives the attorney-client privilege "if it injects into the case an issue that in fairness requires an examination of otherwise protected communications."  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994)(quoting *Conkling v. Turner*, 883 F.2d 431, 434-35 (5th Cir. 1989)).  The attorney-client privilege may also be waived when a client testifies concerning portions of the attorney-client communication.  *See id.* at 1386.  Finally, courts have held that a party who fails to assert the privilege timely  waives the privilege.  *See Third Party Verification v. SignatureLink, Inc.*, No. 6:06-cv-415-Orl-22DAB, 2007 WL 1288361, at *3 (M.D. Fla. May 2, 2007)(discussing cases).

    2. *Application to the Withheld Documents.*

     (i) Initial Elements of the Privilege.

The record before the Court establishes that LMC was the client of in-house counsel Edith Jones, who is a member of the bar of a court. The record reflects that Jones acted as a lawyer in connection with the communications at issue.  Other communications involved outside litigation counsel for LMC, who, as shown by their appearance as litigation counsel in the present case, are also members of the bar of a court.

The communications relate to facts of which Jones was informed by LMC employees. The other participants in the communications were all employees of LMC, and there is no contention that the communications were shared with corporate employees who did not have a need to participate in these communications.

My *in camera* review of the documents reflects that some of the written communications were made for the purpose of securing assistance in an anticipated legal proceeding.  Other of the written communications, however, are merely transmittal or scheduling documents, and were not for the purpose of securing legal services, an opinion on law, or assistance in some legal proceeding.  *See* documents at tabs 9[3], 20, 23, 25.  These documents are, therefore, not within the attorney-client privilege.

Similarly, electronic documents, or portions thereof, retrieved from the computers that were examined are facts provided to counsel that are not protected by the attorney-client privilege.  As such, these documents are not protected by the attorney-client privilege.  Therefore, the electronic information, including documents and file or folder names, attached to Poldervaart's first report, document at tab 8, are not privileged.  Similarly, the documents attached to the e-mails at tabs 9, 10 and 12 are not privileged.  Likewise, the information retrieved from the computers that is included verbatim within the e-mails at tabs 6, 18, 21 and 24 is not privileged.

LMC did not address whether the remaining communications were made in confidence with the intent that they remain confidential.  Information contained in the documents reviewed *in camera* reflects that counsel contemplated that the results of the investigation might be disclosed to the Court or to the testifying expert, but there is no indication that the underlying communications would, themselves, be publicly disclosed.  *See* documents at tabs 11, 17, 31.  Accordingly, the first three elements of the attorney-client privilege have been established as to the documents and portions thereof for which the privilege was asserted in the Revised Privilege Log, except as stated above.

---

[3] The tab number is the number of each document on the Revised Privilege Log.

(ii)     <u>Waiver</u>.

The movants argue that LMC waived the privilege on a number of theories.  I consider first whether LMC waived the attorney-client privilege by failure to assert it timely.  The documents at tabs 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 18, 20, 21, 23, 24, 25, 26, and 28 were listed in the original privilege log as withheld only based on a claim of work product protection.  The document at tab 33 was first listed in the supplemental privilege log as withheld only based on a claim of work product protection.  The original and supplemental logs do assert the attorney-client privilege as to other documents, including the document at tab number 6 at issue here, which indicates that LMC asserted all of the privileges and protections it concluded were applicable when it produced the original and supplemental privilege log.

LMC argues that it would be too severe a sanction to find a waiver of the attorney-client privilege based on its inadvertent failure to include the attorney-client privilege in its original and supplemental privilege logs, citing *United States v. Gericare Medical Supply Inc.*, No. 99-0366-CB-L, 2000 U.S. Dist. LEXIS 19662, at *18-20 (S.D. Ala. Dec. 11, 2000)(*Gericare*).  LMC offered no evidence to support its suggestion that the failure to claim the attorney-client privilege in its original and supplemental privilege logs was inadvertent.  Moreover, in *Gericare* the problem was the delay in production of the privilege log, not the failure timely to assert all claimed privileges and protections with respect to the withheld discovery.  The *Gericare* court concluded that waiver was too severe a sanction for the delay in production of the privilege log because the written response to the request for production indicated that documents protected by the work product doctrine would not be produced.

-12-

In reaching this decision, the court distinguished the situation in which a party failed to assert a particular privilege expressly. *Id.* at 19.

The present situation is more analogous to that presented in *Lockheed Martin Corp. v. Boeing Co.*, 393 F. Supp. 2d 1276 (M.D. Fla. 2005). In that case, LMC argued that Boeing waived its right to rely upon a grand jury secrecy privilege when it failed to assert the claim of grand jury secrecy expressly in its original privilege log. *Id.* at 1281. While the Court found that no grand jury secrecy privilege existed in the context of that case, the Court made an alternative finding that if such privilege existed, Boeing waived it by failing to assert it timely. *Id.* (citing Fed. R. Civ. P. 26(b)(5) and the Advisory Committee notes thereto).

Just as LMC argued that Boeing waived its assertions of privilege by failing to state them expressly in its original privilege log, so too LMC waived its assertions of the attorney-client privilege in the present case by failing to state them expressly in its original and supplemental privilege logs. Accordingly, I conclude that LMC waived any claim of attorney-client privilege as to all remaining documents except for the document at tab 6 for which the attorney-client privilege was originally asserted. However, the portion of the document at tab 6 in which information retrieved from the computer search is quoted verbatim is not privileged.

The movants also argue that LMC waived the attorney-client privilege by injecting the issues of unauthorized use and disclosure of computer-stored information into this case. "'[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege.'" *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989)(quoting *United States v. Mierzwicki*, 500 F. Supp. 1331, 1335 (D.Md. 1980)). "The great weight of authority

holds that the attorney-client privilege is waived when a litigant 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.'" *Id.* (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).  This is often referred to as an "at issue" waiver.

Making allegations in pleadings is insufficient, standing alone, to constitute an "at issue" waiver.  *See, e.g., In re Hillsborough Holdings Corp.*, 176 B.R. 223, 241 (M.D. Fla. 1994).  Counsel for LMC made clear at the beginning of Poldervaart's deposition that his testimony was not being offered regarding his search of the Fleming, Speed and St. Romain computers. LMC has not affirmatively used Poldervaart's findings in support of its case with respect to these searches. Accordingly, under the facts presently before the Court, I conclude that LMC has not waived the attorney-client privilege through issue injection.

Accordingly, I find that only the document at tab 6, except for the electronic documents quoted verbatim therein, is protected by the attorney-client privilege.

3.      *Application to Answers to Deposition Questions.*

The movants request that the Court require Poldervaart to answer a number of deposition questions that he was instructed not to answer by LMC's counsel, and to permit them to ask appropriate additional and follow-up questions.  *See, e.g.,* Doc. No. 271 at 9-14; Doc. No. 274 at 4-9; Doc. No. 275 at 4-5.  During the deposition, counsel for LMC sometimes indicated that the basis for the instruction not to answer was the work product doctrine, and sometimes indicated no basis at all for an instruction not to answer.  Following the deposition, LMC asserted in the Revised Privilege Log both the attorney-client privilege and the work product doctrine as to many of the inquiries.  LMC now

-14-

concedes that Poldervaart should have been permitted to answer questions seeking factual information, but it proposes to provide those answers only through an errata sheet, rather than reopening Poldervaart's deposition.

LMC correctly concedes that information about the facts Poldervaart learned during his forensic examinations are not protected by the attorney-client privilege.  Similarly, questions regarding the way in which Poldervaart conducted the examinations is not protected, except to the extent that they would reveal instructions he received in confidence from counsel.

Poldervaart was permitted to testify about the essence of the initial instructions Jones gave to him regarding the forensic examination to be conducted, such that these instructions are no longer privileged.  *Compare* Poldervaart Dep., doc. no. 271-4 at 52 ("The initial task was to look for an[y] evidence of proprietary data that may have left the company.") *with* Jones' instructions to Poldervaart, document at tab 1.  Other than additional search words proposed by counsel after Poldervaart issued his first report, *see* document at tab 21, there is no evidence that attorney-client communications influenced the manner in which Poldervaart conducted the forensic examination.  Accordingly, the attorney-client privilege does not protect questions regarding the nature of the forensic examinations, how he performed the forensic examinations, and the documents he searched for, except with respect to the search terms provided by counsel.

LMC's proposal that Poldervaart respond to questions through an errata sheet is not acceptable.  Because LMC's counsel instructed Poldervaart not to testify on broad areas of inquiry, including areas they now concede Poldervaart should have been permitted to answer,  movants'

counsel were unable to develop fully their lines of questioning of Poldervaart.   Therefore, the Court

will permit Poldervaart's deposition to be reopened.

      B.     <u>Work Product</u>.

         *1.*    *Applicable Law.*

      The work product doctrine was established by the Supreme Court in *Hickman v.*
*Taylor,* 329 U.S. 495, 511 (1947). This doctrine, now codified in Rule 26(b)(3) of the
Federal Rules of Civil Procedure, protects from discovery documents prepared in
anticipation of litigation or for trial. The rule provides qualified protection to
"documents and tangible things ... prepared in anticipation of litigation or for trial" by or
for a party, or by or for a party's representative. Fed. R. Civ. P. 26(b)(3).

*Abdallah v. Coca-Cola Co.*, No. CIV A1:98CV3679RWS, 2000 WL 33249254, at *4 (N.D. Ga. Jan.

25, 2000). The work product doctrine also protects oral expressions of an attorney's mental

impressions, legal theories and subjective evaluations.   *Lott v. Seaboard Sys. R.R., Inc.*, 109 F.R.D.

554, 557-58 (S.D. Ga. 1985).   However, the work product doctrine does not protect facts contained

in documents prepared in anticipation of litigation.   *See United States v. Pepper's Steel & Alloy, Inc.*,

132 F.R.D. 695, 698 (S.D. Fla. 1990).

      The party asserting that a document or information is protected work product has the burden of

establishing that the document was prepared both (1) in anticipation of litigation and (2) by the party or

by a representative of the party.   Fed. R. Civ. P. 26(b)(3); *Hodges, Grant & Kaufmann v. United*

*States,* 768 F.2d 719, 721 (5th Cir. 1985); *Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland*,

131 F.R.D. 596, 600 (M.D. Fla. 1990).   As for the first of these factors, "litigation need not necessarily

be imminent . . . as long as the primary motivating purpose behind the creation of the document was to

aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

""Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as 'opinion work product.'" *Cox*, 17 F.3d at 1422. For a party to obtain disclosure of work product other than opinion work product, it must demonstrate a "substantial need of the materials in the preparation of the party's case and [an inability] without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). In contrast, "'opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'" *Cox*, 17 F.3d at 1422 (quoting *In re Murphy*, 560 F.3d 326, 336 (8th Cir. 1977)).

2.       *Application to the Withheld Documents.*

*In camera* review of the documents and the other information before the Court establishes that most of the withheld documents were prepared to assist in anticipated litigation regarding the use and disclosure of LMC proprietary information by the movants in connection with their work with Mediatech and L-3. All of the withheld documents for which the work product protection is asserted were prepared or gathered by LMC through its employees or agents.

Documents that are merely transmittal or scheduling documents are not prepared primarily to assist in litigation. *See* documents at tab 9 (transmittal email), tab 20, tab 23 (discussed further below), tab 25. Similarly, electronic documents, or portions thereof, retrieved during the search of the computers were not prepared in anticipation of litigation. The evidence does not support a finding that these documents reveal any opinion work product. Indeed, *in camera* review reflects that, except for suggesting search terms and providing factual background information, the attorneys had little input

into the design or scope of the forensic examinations other than, as Poldervaart testified, to find "an[y] evidence of proprietary data that may have left the company." Poldervaart Dep. at 52.[4]

Therefore, only the documents containing instructions about how to conduct the search and what specifically to search for are opinion work product, except as previously disclosed.[5] *See* document at tabs 21 and 26.  Thus, opinion work product protects the document at tab 21, except for the electronic documents quoted therein, and the document at tab 26.  The movants have not shown the extraordinary need necessary to support disclosure of opinion work product.

The remaining documents at issue are fact work product, not opinion work product, because the documents do not reflect counsel's mental impressions and theories. Accordingly, while the work product protection applies to these documents, it may be overcome by a showing of substantial need.

The movants have made such a showing.  As the movants argue, they need the documents prepared by Poldervaart because, as of the filing of the motions, LMC had not identified with specificity the computer-stored information that it contends is proprietary and trade secret information improperly taken or disclosed by the movants, and it had not identified with specificity the computer-stored information that each of the movants is alleged to have improperly accessed, disclosed or

---

[4] *See* documents at tabs 1, 2, 6, 8 (Report, Investigation Notes, third paragraph), 13 (e-mail from Jones), 26.  Some of the documents reviewed *in camera* refer to conversations between Poldervaart, Densmore and counsel that are not memorialized in the record.  LMC has not submitted evidence establishing that any attorney's mental impressions that were communicated during these conversations are disclosed in the documents at issue.

[5] The third paragraph of the Investigation Notes section of Poldervaart's first report, document at tab 8, summarizes the instructions he received.  Because these instructions fall within his general description of the investigation task – to determine whether LMC proprietary data had left the company – I conclude that these instructions are no longer protected because the substance of the instructions were disclosed by Poldervaart in his deposition testimony, as discussed with respect to the attorney-client privilege analysis *supra*.

-18-

permanently deleted.  *See, e.g.,* Doc. No. 275-5, answers to interrogatories 2 and 7.  The movants also do not have access to information stored on LMC computers, including information in the ATARS share folder.   Therefore, an examination of the movants' computers could not address whether information contained therein exists, or ever existed, in the LMC computers.  *See* Doc. No. 271 at 21. Finally, there is factual information contained in the documents that may not be otherwise available to the movants. *See* document at tab 28, Investigation Notes.  Under these circumstances, the movants do not have the ability to direct the court-appointed computer examiner how to design an effective search to retrieve the information in LMC's possession.[6]

LMC's testifying expert, Benjamin Cotton, opined that "[r]ecovering information from the unallocated space of a hard drive is extremely labor intensive and is, in many cases a task that requires painstaking manual processes." 1st Cotton Aff. ¶ 2.  As described above, all of the information on the Speed computer is contained in unallocated space due to the reimaging of the computer by LMC.  The documents reviewed *in camera* also disclose that Poldervaart's search may have included examination of electronic documents, or portions thereof, in unallocated space in the other computers.  Under these circumstances, it would cause the movants undue hardship to require them to try to have the Court-appointed computer examiner conduct an examination of information stored in unallocated space on the computers. Furthermore, any examination would be futile if the movants were not apprised of information apparently known only to LMC that would be material to the conclusions reached.  *See* document at tab 28, Investigation Notes.

---

[6] Based on this finding, I need not reach the question of whether the discussions with expert witness Cotton waived the work product protection.  In any event, the record is not sufficiently developed to make this determination.

Accordingly, it is **ORDERED** that LMC shall provide to counsel for the movants on or before August 6, 2007 documents listed in the Revised Privilege Log at tabs 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 18, 20, 23, 24, 25, 28, 33, except that communications contained therein sent by counsel may be redacted.  It is further **ORDERED** that LMC shall provide to counsel for the movants on or before August 6, 2007, those portions of the documents listed in the Renewed Privilege Log at tabs 6 and 21 that quote verbatim electronic documents, or portions thereof, obtained during the forensic examination.  It is further **ORDERED** that the deposition of Chris Poldervaart may be reopened, for a period not to exceed one day of seven hours, and that Poldervaart may be examined and shall provide responsive testimony subject to the limitations discussed herein.

## III.    SANCTIONS.

The movants each request an award of reasonable expenses, including attorneys' fees, incurred in filing the present motions.  Federal Rule of Civil Procedure 37(a)(4)(C) provides that if a motion is granted in part and denied in part the Court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.  At this juncture, I find it appropriate to require all parties to bear their own fees and costs.  However, the motion for an award of reasonable

expenses may be renewed should LMC not comply with this Order unless excused from doing so by a

subsequent ruling from this Court.

      **DONE** and **ORDERED** in Orlando, Florida on July 29, 2007.

                               *Karla R. Spaulding*

                                  KARLA R. SPAULDING
                        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties